Case number 24-1763, Ashraf Mustafa v. Ford Motor Company. Argument is not to exceed 10 minutes for the plaintiff, 5 minutes for the amicus, and 15 minutes for the defendant. Mr. Stempian, you may proceed for the appellant. Good morning, judges. Eric Stempian appearing on behalf of the appellant, Ashraf Mustafa. I would like to reserve 3 minutes for my rebuttal, judge. I see it has, oh there we go, there's the reset. Thank you. As the court's aware, this is here on an appeal from a granting of a 12B6 motion, a motion to dismiss on our first amended complaint. The judge dismissed, the trial court dismissed the case on the basis of the Iqbal, Twombly pleading standards. And in essence, all we're required to prove or to provide or show in our complaint to satisfy Iqbal and Twombly is that we can assert facts where you could plausibly presume that the elements of the prima facie case could be met. In here, this is an employment discrimination and retaliation claim. The elements of the prima facie case are the very familiar McDonnell Douglas burden shifting analysis where I just have to show that he was a member of a protected class, he was qualified, he suffered an adverse employment action, and that in this case we're alleging that similarly situated non-members of the protected class were treated more favorably. The first three elements really aren't in dispute and shouldn't be in dispute. Those are clearly pled in the complaint. It's really the last element that's at issue in this case. The question becomes, did we provide enough factual support for the proposition that similarly situated non-members of the protected class were treated more favorably than my client? And all we have to show is the plausibility standard. There are two criticisms that have come from the defendant and what the trial court adopted with regard to that particular element of the claim. Number one, that the similarly situated individuals weren't fully or properly or sufficiently identified. And secondly, that there wasn't sufficient allegations of fact of how those similarly situated employees were treated more favorably. And I believe that this is an overly technical and pedantic reading of the facts that are stated in the complaint. The complaint, first with regard to the identification, the identifying factors that are listed in the complaint are that each one of these persons, all of whom are identified clearly as non-members of the protected class. Because this is a race based on his Middle Eastern race and religion based on his Muslim, his religion being Islam. And so we clearly identified that they're not members of the protected class. And we identified them as all being members of his specific team, all of them having similar job titles, all of them having similar job duties, and that they had the exact same supervisors. And when you look at the case law that this court has put out, Ersogevich, the Jackson case, the Luzon case that we cite in our briefs, the court has been very clear that these aren't hard and fast factors, that these are very fact specific questions that a court has to answer, that a trial court has to address at the summary judgment stage as to whether or not which factors apply under which circumstances. I think we said, I know we've affirmed some dismissals and we've reversed others, but those affirmances, I think we've said, you know, just saying something like, I was treated differently than, you know, I'm Asian, I was treated differently than non-Asian men or something in the Han case, that was too vague, right? Like who are, I mean, give us a little more specifics, like who are these people, what are their, what were their races, or what were their positions, or, I mean, just saying, I'm Muslim, I'm treated differently than non-Muslim men, that's not enough, right? And we went beyond that. These are specifically members of his teams, these are specifically people who have the very similar job titles and are doing very similar jobs and are reporting to the exact same supervisors. I mean, nobody's name, there's no, there are no names, there aren't really any specific people tied to positions, it's not clear what, you know, what their races are, I mean, they're non-Muslim, I guess, they're non-Middle Eastern. I mean, what do you think the closest case, what do you think the closest case is, the ones that you just named? Yeah, Ersogevich, because it's a standard, not a specific factual similarity, it's the standard that the court applies, because this is, again, this is a motion to dismiss. So we're talking about, is it plausible, so for example, if I ultimately, in this case, I'm able to prove that these people were doing very similar jobs to him, they were members of his team, they had the exact same supervisors, they had very similar job titles, then I don't think there would be a question that this court would say, well, that probably, or at least there's a chance, it's plausible that that's going to meet that Ersogevich standard that this court has put forth. Is the only employee you mention as the comparator in the complaint is Jeff Baerle, or is it Baerle? I haven't had a chance yet to take his deposition, so I'm not sure, but I think it's Baerle. And he's a comparator because he received the young engineering's assistance when Mr. Mostafa was refused it, even though purportedly the engineer was being sent for his assistance. Is that the core of your comparators? That is the core of the comparators in terms of the issue with the assisting engineers. Now, the complaint, the amended complaint also alleges that other engineers on the team received assisting engineers, and some of them even had two assisting engineers. So it's not just Mr. Baerle, but Mr. Baerle was the one who received the specific assistant that was sent to help my client from the headquarters. Could you allege a little bit more about what the circumstances were of this assistance and what was needed? It seems pretty vague, what you're saying, that someone needed more assistance or got more assistance. Wouldn't you need to say that they each had the same, or have you alleged enough to say that they had the same job responsibilities, Baerle and your client? I don't believe that's necessary because this person was specifically sent to assist my client. It wasn't a matter of he was treated more favorably because there was a determination that Mr. Baerle had more of a need. This person, this assisting engineer, was specifically sent for my client, and instead he's sent to a non-member of the protected class over the objections of one of the other team members, as we allege in our complaint. Even one of the team members spoke up at the meeting and said, hey, this guy was sent for Oshroff. And they said, well, we'll talk about it later. And that's what we allege in our complaint. So whether Mr. Baerle needed him or not doesn't matter because the headquarters had determined that my client was the one who needed him, but the immediate supervisors refused to do it. I think that is very specific evidence that a non-member of the protected class was treated more favorably. I think your time is up. We'll have your rebuttal time. Thank you. Thank you, and may it please the Court. Jim Driscoll McEachran for the EEOC. I'd like to address causation for Mustafa's retaliation claim. Mustafa plausibly alleged facts, giving rise to an inference of causation under two theories. A first, meaningful opportunity to retaliate theory, and a theory based on the other actions of the defendant. On the meaningful opportunity theory, this Court may use its judicial experience and common sense to determine whether it's plausible that Ford took its first opportunity to retaliate when Mustafa returned from leave. In this Court's 2020 decision, Kirilenko, we assume, it reasoned that a jury could find the employer used its first meaningful opportunity to retaliate against one of the plaintiffs when it refused to rehire her. That was true even though it wasn't the very first opportunity to retaliate. The Court acknowledged that the plaintiff had continued to work for about six months. What is your theory as to why there was not a meaningful opportunity while he was on medical leave to terminate him? Your Honor, the first meaningful opportunity theory, I think, looks into if there's a break in the chronology that can be explained by something. So here, that leave raises a question. Now, discovery will let the parties determine what happened during the leave. Here, there's no allegation that there was any change in Mr. Mustafa's conduct or anything that came to light that would justify terminating him immediately when he returned from leave. Was there any legal reason why Ford could not have terminated him during his leave? No, Your Honor, that's not what we're arguing. We're arguing that there's temporal proximity in the sense that he engages in productivity in October. Then there's the unwarranted time card fraud two weeks later. There's the negative performance review within two months of the protected activity. And then shortly after that, he goes out on leave. Nothing in the complaint suggests anything changes while he's on leave. And then the day he returns, they schedule a meeting and terminate him three days later. At the motion to dismiss stage, the question is whether that's enough to plausibly infer a causal connection between the protected activity and the termination. And just as in Kirilenko v. Son, where the court said the employee had a reason not to terminate them when she was on the grant because the grant was providing some financial benefit to the school. The question at summary judgment, if this case is there, just like Kirilenko was on summary judgment, is what reasons there were for that leave. But that information right now is all in the employer's possession. So all the plaintiff can do is plausibly allege a causal connection, and the facts in this complaint do so. And as I mentioned, the first meaningful opportunity theory doesn't stand alone here. Mr. Mustafa also alleged other acts of retaliation. He alleged that unwarranted allegation of time crime fraud within two weeks. That's very short temporal proximity. And then within two months, the negative performance review. This court can consider all of those together to consider whether it was plausible that there was a causal chain connecting that protected activity to his ultimate termination. In using it, it's a little bit difficult to understand how you use something as background, because we know that we are at the termination, and that's where the damages accrue from. How would you best articulate the standard of how you look at something as background information? Because there are shorts issues. There are just a number of issues here that pretty quickly followed against Mr. Mustafa. So how are those issues, how do we consider those issues, even though they are not themselves an independent claim? Your Honor, I think you said it exactly, that they're background evidence that we can use to determine whether or not there's a plausible causal connection. So here, there's that string of events that happens really one right after the other until he goes out on that work-related injury leave in January. And so the court doesn't need to consider those actionable acts of discrimination. The Supreme Court said in Morgan, we can consider those as background. And that's what we would ask this court to do here, is to say, we don't need to look at the termination in isolation. What else happened between the protected activity and the termination? And they would provide important background evidence connecting the links, at least at the motion-to-dismiss stage, for the plaintiff to plausibly allege that connection. Are you only addressing causation, not knowledge? Your Honor, the district court here only addressed causation, and so that's what we focused on in our brief. To the extent that awareness is sort of contingent on knowledge, I'd just say, and Mr. Mostafa's counsel can address this on rebuttal, that he did allege facts that would give a suggestion of awareness that make it plausible in alleging that Ritchie made the unwarranted time-crawled accusation in retaliation for, and then that also, in I think it's paragraphs 35 and 36, alleged a protected activity, and then that followed right afterwards. Most of the cases the court cites on that are summary judgment cases where both parties have access to the information about who knows what about when the protected activity occurred and who that was shared for. At the motion-to-dismiss stage, again, we just need to make those plausible inferences that the elements of the claim can be met. So you think that if I just plead that I filed a formal complaint with the employer, I don't need to say any more than that with regard to whether a decision-maker would have seen it or was aware of it? I think there need to be facts that give rise to that plausible inference, so here we have that inference that he files the complaint, and within two weeks, all of a sudden, there's a new accusation of time-crawled fraud. So there's additional facts that you can infer from. Okay, thank you. Thank you for your time. Thank you. Thank you, Your Honor, and may it please the court, Matt Gregory for Ford. This is a straightforward application of Iqbal Entwombly to Mr. Mustafa's complaint. He had an opportunity to amend and allege some of these facts, these core facts that are simply missing. He wasn't able to cure the deficiency, and then the district court correctly granted the motion to dismiss. We think you should affirm. I'll start where the EEOC left off with the retaliation claim and on this issue of awareness. The Boxall case, which we cite in our brief, is on all fours here. There, as here, you had retaliation that allegedly began almost immediately after the alleged protected activity. There were only conclusory allegations suggesting that the decision-makers, excuse me, the relevant person in that case had knowledge, and so the court affirmed a motion to dismiss decision. Was there a complaint, actually an HR complaint filed in that case, though? The facts are a little odd in Boxall. It's a court, it's a state court, and there were four judges that allegedly were the supervisors. Three of them are alleged to have investigated the complaint, so I don't know what the formal process was, but there clearly was a complaint. The fourth judge, who was the subject of the complaint, was the one that allegedly retaliated. There was just no allegation that he had any awareness of the complaint to begin with. We also cited the Nesmith case. That's unpublished, but same thing, motion to dismiss. Our cases are not crystal clear on whether who you initially have to allege had knowledge, whether it's the employer, whether it's the employer and the decision-makers, whether it's just the decision-makers. I mean, it's a motion to dismiss. He filed a formal complaint, so somebody at the company knows. Why is that not enough in a motion to dismiss? He doesn't have all of the information about the internal workings of the HR department at Ford or any of that stuff. I mean, he's probably familiar with it, I assume, because he filed the complaint, but I don't know what else is he... How is he going to know for sure that Ritchie knew about his complaint? Well, you could imagine lots of facts where he would know that. For example, if Ritchie said something that indicated animus related to the complaint, if other coworkers told him Ritchie was upset about the complaint, there are lots of cases that have facts just like that. If he alleged that the HR department was involved in his termination, here he has a specific allegation. This is at paragraph 34, that it went to the HR department, and he also specifically alleges that three other people, his supervisors, are the ones that decided to terminate him. There's nothing connecting those dots of the knowledge of the HR department to the knowledge of the people who ultimately decided to terminate him. But isn't an employee required to make that complaint to the HR department? I don't think it's required for it to be protected activity that's covered by Title VII. Now, under Ford's processes, I assume that was the appropriate person to make the complaint. So he followed Ford's processes, and your position is that he has to then show that his immediate supervisor had been informed? I'm struggling with that, because most of the cases where we look at all of these other facts are cases in which there was no official complaint filed. Well, again, Box Hill is exactly like this. The decision-maker who allegedly retaliated wasn't alleged to have had knowledge of a complaint that was made, and this Court affirmed a motion to dismiss. And was that a formal complaint? I think you did not have the answer to Judge Bush's question. Yeah, I don't think it was alleged, or at least the facts in the case suggest it was a formal HR complaint. It was a much smaller employer kind of unique situation. But I think the underlying legal principle is the same in both situations. And this is ultimately just a straightforward application of Iqbal and Twombly. He's required to allege facts sufficient to infer that he can state a plausible claim. And one of those facts is obviously that the people who decided to take the alleged retaliatory action knew about the protected activity. If he can't pass that hurdle at the motion-to-dismiss stage, Iqbal and Twombly say, you know, you're not entitled to discovery just because you don't have the facts. And why doesn't the background information that can be considered, the fact that he was accused of improperly filing a time card, and that he was told he couldn't wear shorts when other non-protected class members were allowed to wear shorts. For the retaliation claim, only the first, the time card fraud allegation would be relevant because the shorts incident happened before his alleged protected activity. You know, you can consider his background context. We haven't disputed that. It's not the underlying adverse action. But the allegation was that the supervisor was kind of singling him out the entire time as your Honor mentioned. So there's no break in the chain of something different is happening. It's roughly two weeks after he filed the HR complaint that would allow you to infer that the supervisor had any knowledge of it. I would like to address the temporal proximity prong, which is where the district court went, which is an independent reason that you should affirm here. This line of cases about first meaningful opportunity, those cases involve situations where the plaintiff was on leave at the time of the protected activity, returned, and then was immediately subject to some sort of adverse action. That's not what happened here. There were at least two and a half months after the protected activity that Ford indisputably could have terminated him and didn't. And so even if you discount all of the time— Before he took the leave, you're talking. Before he took the leave. So the alleged protected activity is October 2020, and then he goes on leave in January 2021. So at least two and a half months later. There's no allegation that Ford or reason to think Ford couldn't have fired him during that time period. And we think you should count the rest of the time as well. There's no reason they couldn't have fired him when he was on leave, but you don't even have to get there in this case. On the discrimination claim, your opposing counsel has run through what is in the complaint and talked also about the prima facie case, but our case law is clear that you do not have to establish a prima facie case in the complaint. Correct. You definitely do not. And I think what's odd about this case is he's using that to go a step further and say he doesn't have to allege any specific facts that would allow you to infer discriminatory intent. He still has to satisfy Iqbal and Twombly. He does not have to satisfy McDonnell Douglas. We're not here talking about burden shifting or any of that stuff. If you look at this court's cases in the Obama-McGruder case, Southfield v. Flagstar, HDC, these are all published cases, and then Hahn, House, Smith, this court has regularly applied that standard to the motion to dismiss stage. So what he can't do is say I have no allegations of intentional discrimination, so I'm going to use McDonnell Douglas, but then I don't even have to allege specific facts about my comparators that would allow you to draw an inference of discrimination. I'm thinking of our, I think, Mussabi case that really addresses that burden, the burden of what it is to plead and says dismissal on the pleadings is often inappropriate in employment discrimination cases where the evidence of motive and discriminatory intent is frequently exclusively in the hands of the defendant. What case do you have that you think makes the claims here not inappropriate for a motion to dismiss? It may be just fine on summary judgment, but we're not at summary judgment. I understood, Your Honor, and it would be a case as I just mentioned to you. So in the 16630 Southfield case, Judge Sutton addresses this exact argument and says post-Iqbal Twombly, it's not enough to say the facts are in the hands of the employer. You have to allege specific facts that allow the inference of intentional discrimination. Now, usually plaintiffs plead more than you have here. This is a very thin complaint, as Your Honor mentioned. You look at paragraph 57, we have these kind of boilerplate assertions that there are other similar situations where people that, you know, what happened to me didn't happen to them. There's no specific facts about who those people were, what their jobs were, anything that would allow you to draw an inference of discrimination. And again, we're not even talking about the termination decision itself. This is at most background evidence for a decision that occurred several months later in July 2021. I understand that there's some language about having to provide names and specific information, and I would agree, most of the cases that are cited there are summary judgment, and that they are about providing name or job held or job qualifications that they will, you know, if you don't have those, then you cannot prevail at summary and judgment. But I don't see any cases that say that all of that information is necessary at the motion to dismiss stage. It's sufficient to make you lose at summary judgment, but what case do you have that says it's necessary at the complaint stage? Yeah, it's just the cases that I mentioned before, Your Honor. It's going to be the 16630 Southfield case. It's going to be the O'Connor Magruder case. There are others that we cite in our brief at the motion to dismiss stage, but the court does exactly this. Again, straightforward application of Iqbal Twombly. We're certainly not asking you to break any new ground here. I think just applying those cases to the very thin allegations in this complaint leads to affirmance. I just, you know, I guess the last thing I'll leave you with, if the court has no further questions. Let me ask one more question. There is someone named, Jeff Bearly is named in the complaint and is named as non-Middle Eastern non-Islam religion. That gives an individual name in the complaint. You have background information of the shorts, the time card. There are several specific references that are events that would appear to be a differential treatment of this individual. Why is that background information not enough to save this at the motion to dismiss stage? Well, other than, you know, Mr. Bearly, he does name, so that's a little bit more specific. There are still no facts about what Mr. Bearly was doing, whether he needed the help more or less than Mr. Mustafa. Is it Richie or Rich Lou? I don't know, Your Honor. I've been calling him Rishi. Yeah, Rishi. But he was asked for help and said no, and then his boss said yes and sent somebody for Mustafa. That's the allegation anyway. Why is that not clear? Why is that not clear that that individual was sent for him because he had taken on the duties of someone who had quit? Because there's nothing that connects that to discriminatory intent for the termination, right? The question before the court is not, was Mr. Mustafa's performance bad? Should he have had more help? Did he need more help? Should his supervisor have given him more help? The question is, when they terminated him in July 2021, is there anything in this complaint, specific facts that allow you to infer that that was because of his race, national origin, or religion? We think there's just nothing there that allows you to draw that inference under this court's cases, even as background evidence. And I'll say I agree with my friend on the other side. This is not a hard and fast rule. We're not asking for a wooden requirement that's missing here. You can look at the complaint. It's very thin. He had an opportunity to amend, didn't take advantage of it, or wasn't able to take advantage of it. So we think you should affirm. Thank you. Oh, I'm sorry. Thank you. With regard to the retaliation claim, I'd just like to address the Boxall case briefly. Boxall is not a Title VII case. Boxall is a 1983 claim brought as a First Amendment retaliation case. The reason that's significant is because 1983 actions are actions against individual state actors for violations of constitutional rights. And 1983 law requires very particular, specific facts as to what each individual defendant did in any particular situation. Here, the defendant's Ford Motor Company. Right? The defendant is not an individual. The defendant is the entity, Ford Motor Company, and the Title VII standard is going to be different than what it's going to be under 1983. You're going to have to show decision... I'm sorry, you're going to have to show knowledge by the decision-makers at some point, aren't you? Correct. But you're just saying you don't have to allege it. You can just allege that you filed a formal complaint. Well, the complaint does allege very specifically that in retaliation for that protected activity, he was then accused of time card fraud by Rishi. So, you know, Iqbal says we have to keep all our experiences in common sense when we come into this. It cannot be in retaliation for something if you don't know about it. I mean, that's a requirement of being in retaliation. But you're asking our common sense to do a lot that maybe could have been in the complaint. Well, I mean, I could have used the words Rishi actually knew about the complaint. Yes, I could have used those... That was conclusory or whatever, right? Right, then I'd be in the same position, exactly. That's not a fact, that's a conclusion. And that's the problem with this... I don't want to get too policy-fired, but I mean, I think Iqbal at the trial court level is getting stretched in a big way. These lawyers, especially in employment litigation, are being asked to basically try their case in the complaint. And that is almost impossible for the reasons that this court has said in the case Judge Strange was just mentioning, because so much of the information is not within my client's ability. So was I not specific enough about these comparators? Well, I don't have their job descriptions. I don't have their job titles. So if I threw in a job title I could... Your client didn't know any of their names? He didn't know what they specifically did or where they were on his team? I mean... I had no guidance to tell me I needed names, Judge. I mean, that's the problem, is that in drafting it, there's no law that says you have to name the people. I mean, I probably could have gone and gotten the names, that is true. But that has not been a legal requirement under Iqbal that I'm aware of about eight or nine engineers. I mean, I'm not saying I couldn't. I mean, I'm certainly not a peer representative of the court that I couldn't. So it was a rollout on an instrument panel, right? Correct. So they were all engineers, right?  So they had some, although it appears that they divided them somewhat with the individual engineers based on the pleadings. But your argument is that it's a small team with all engineers, and what's your closest case that would show that this, at the motion-to-dismiss level, is sufficient? I actually would say Iqbal, because I believe that I've met those standards of plausibility. I mean, it's what's plausible, not what I can prove. And I think that goes a little bit to the McDonnell-Douglas standard. I understand this isn't a prima facie case analysis, it's a presumption of discrimination, and then there's the shift to the defendant. So as long as I can show plausibility on the prima facie case, that should be enough to get past the motion. Thank you. I think our time is up. We thank you both for briefing and argument, and the case will be taken under advisement and an opinion issued in due course.